# Matter of E-Z-, Respondent

*Decided by Board June 5, 2025*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The Immigration Judge's predictive findings regarding the harm the respondent will suffer in Russia based on his travel to the United States and his support for Ukraine were speculative, and thus the Immigration Judge erred in granting the respondent's application for protection under the regulations implementing the Convention Against Torture.

FOR THE RESPONDENT: Atara Eig, Esquire, Miami, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Stacy Norcross, Assistant Chief Counsel

BEFORE: Board Panel: MULLANE, GOODWIN, and HUNSUCKER, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's October 2, 2024, decision granting the respondent's application for protection under the regulations implementing the Convention Against Torture ("CAT").[2] The respondent, a native and citizen of Russia, opposes DHS' appeal and cross appeals the Immigration Judge's decision denying his applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018). We will dismiss the respondent's appeal, sustain DHS' appeal, and vacate the Immigration Judge's decision, in part.

The respondent claims to have suffered past harm and fears future harm in Russia on account of his political opinion. The Immigration Judge found

---

[1] Pursuant to Order No. 6312-2025, dated July 2, 2025, the Attorney General designated the Board's decision in *Matter of E-Z-* (BIA Jun. 5, 2025), as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2025). Editorial changes have been made consistent with the designation of the case as a precedent.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2025); 8 C.F.R. § 1208.18(a) (2020).

the respondent credible but denied his applications for asylum and withholding of removal after finding that the respondent's harm did not rise to the level of persecution. The Immigration Judge also found that the respondent did not demonstrate a nexus between the harm he suffered and fears and his political opinion. However, the Immigration Judge granted the respondent protection under the CAT because he found it was more likely than not that the respondent would be subject to torture if he were returned to Russia.

We first address the respondent's appeal. We affirm the Immigration Judge's determination that the harm the respondent claims to have experienced does not rise to the level of persecution. *See, e.g., Morales v. Sessions*, 860 F.3d 812, 816 (5th Cir. 2017) (explaining that whether harm suffered rises to the level of persecution is a legal question subject to de novo review). The respondent testified that he was detained twice in Russia by members of the Federal Security Bureau ("FSB"). On both occasions, the respondent was interrogated about his suspected participation or involvement in extremist organizations but was released after it was confirmed that he was not involved in any extremist organizations and that he had only ever expressed his opposition to the Ukraine-Russia war in conversations with his coworkers. On the first occasion in March 2022, the respondent was detained for 3 hours, and the FSB confiscated and went through his cellphones. On the second occasion in August 2023, the FSB detained the respondent for 10 hours and threatened to charge him with organizing an extremist group and inviting people to join the group. The respondent also testified that the FSB attempted to search his home in October 2023 and called his wife twice asking about him after he left Russia.

On appeal, the respondent generally argues that the harm he suffered rose to the level of persecution because the FSB's conduct constituted a "sustained and systemic effort to target him on account of his political opinion." However, we agree with the Immigration Judge that the respondent's interactions with the FSB, considered individually and cumulatively, do not amount to the extreme conduct contemplated by the INA as amounting to persecution. *See Aben v. Garland*, 113 F.4th 457, 465–66 (5th Cir. 2024) ("Persecution 'is an extreme concept,'" which "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." (citations omitted)). Although the respondent may have been held for several hours while he was interrogated, he was not beaten or otherwise physically harmed, and he was not ultimately arrested or tried for any crimes. *See Martinez-Lopez v. Barr*, 943 F.3d 766, 771 (5th Cir. 2019) (holding that "'mere denigration, harassment, and threats' are ordinarily not extreme enough to be considered persecution"

(citation omitted); *see also Morales*, 860 F.3d at 816 ("Examples of persecution include, but are not limited to, 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" (citation omitted)).

We also affirm the Immigration Judge's determination that the respondent did not establish that his political opinion was or will be at least one central reason for the persecution he fears if returned to Russia. *See Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 211 (BIA 2007) (holding that "an applicant must produce evidence, either direct or circumstantial, from which it is reasonable to believe that the harm was or would be motivated in part by an actual or imputed protected ground"), *aff'd sub som. Ndayshimiye v. Att'y Gen. of U.S.*, 557 F.3d 124 (3d Cir. 2009). The Immigration Judge found that the reason for the respondent's arrest and interrogation was not because he expressed his political opinion but rather because of a legitimate investigation as to whether the respondent was in violation of the law prohibiting organizing an extremist group or disseminating false information. The Immigration Judge found that once the FSB confirmed the respondent was not in violation of the law through the search of his phones and their questioning, he was released even though they were aware of his political opinion.

The Immigration Judge compared the respondent's experience with that of his colleagues who were detained at the same time as the respondent but who were actually charged and imprisoned for the crimes. The respondent testified that he did not participate in any political activity aside from voicing his opposition to the war in conversations with colleagues. Conversely, he did not know what activities his colleagues were involved in outside of their job. Given this testimony, the Immigration Judge's finding that any political component to the FSB's motive was tangential to their engagement in a legitimate criminal investigation is not clearly erroneous, as it is a permissible view of the evidence. *See Matter of N-M-*, 25 I&N Dec. 526, 532 (BIA 2011) ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by [the Board] for clear error."); *Matter of J-Y-C-*, 24 I&N Dec. 260, 263 (BIA 2007) (providing that a factual finding is not clearly erroneous merely because there are two permissible views of the evidence). We therefore affirm the Immigration Judge's conclusion that the respondent has not demonstrated that his political opinion was at least one central reason for the claimed harm. *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); *Matter of C-T-L-*, 25 I&N Dec. 341, 348 (BIA 2010) (concluding that the "one central reason" standard applies to withholding of removal).

Because nexus is dispositive of asylum and withholding of removal, we need not reach the respondent's remaining arguments on appeal regarding his well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b) (2020); 8 C.F.R. § 1208.16(b)(1)–(2) (2025); *see also INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

Without past persecution or nexus to a protected ground under the INA, eligibility for asylum is not established. It follows that the respondent also did not satisfy his burden of proof for withholding of removal. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006). Thus, because the Immigration Judge properly denied the respondent's claims for asylum and withholding of removal under the INA, the respondent's appeal is dismissed.

Turning to protection under the CAT, we agree with DHS' argument on appeal that the Immigration Judge's predictive findings about the harm the respondent will suffer in Russia are clearly erroneous because they are not supported by the record and are instead based on the Immigration Judge's speculation or conjecture. *See Matter of R-A-F-*, 27 I&N Dec. 778, 779 (holding that the Board reviews predictive findings for clear error and reviews de novo whether the predicted outcome satisfies the definition of torture). *See generally Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 687 (2021) (explaining that if the trier of fact's "view of the evidence is plausible in light of the entire record, an appellate court may not reverse even if it is convinced that it would have weighed the evidence differently in the first instance."); *Matter of J-Y-C-*, 24 I&N Dec. at 263.

The Immigration Judge's decision does not identify record support for his finding that the respondent will likely suffer harm rising to the level of torture upon return to Russia because he is being returned from the United States, which supports Ukraine in the war. The Immigration Judge does not identify any record evidence supporting his findings that the respondent was previously suspected of working with foreign entities and that he would be again in the future simply because he is being returned from the United States. The record reflects that the respondent was reported for—and cleared of—participating in extremist organizations within Russia, not working with foreign entities. Further, although the record supports the Immigration Judge's finding that the FSB already investigated him twice and that his colleagues were imprisoned for the same crimes the respondent was investigated for, there is no evidence that his colleagues' imprisonment was not legitimate or that they have been tortured since being imprisoned. Thus,

while the Immigration Judge's finding that the respondent may be detained and interrogated upon return from the United States is supported by record evidence, there is insufficient record evidence to support the Immigration Judge's finding that the respondent will suffer harm that rises to the level of torture.

The Immigration Judge also relied on the country conditions evidence in the record regarding conditions in Russian jails to find that the respondent is likely to be detained and tortured. There is insufficient record evidence, however, to support the Immigration Judge's finding. As the Immigration Judge acknowledges, there is nothing in the country conditions evidence to support the notion that the respondent, or any Russian, will be subject to detention, much less torture, in Russia for merely having traveled to the United States. The respondent has previously traveled outside of Russia to various countries and has no history of being detained, interrogated, or tortured upon return from foreign travel. Thus, the Immigration Judge's finding that the respondent will suffer harm constituting torture upon return to Russia is not supported by the record evidence and is clearly erroneous.

In sum, the Immigration Judge's determination that the respondent established a likelihood of future torture is based on a series of clearly erroneous factual findings, and, under our de novo review, is in error. *See Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (A.G. 2006) (holding that the Immigration Judge erred in granting CAT protection based on a "series of suppositions" strung together by the Immigration Judge when the record evidence "d[id] not establish that any step in th[e] hypothetical chain of events [was]s more likely than not to happen, let alone that the entire chain w[ould] come together to result in the probability of torture of respondent"); *see also Alexis v. Barr*, 960 F.3d 722, 731 (5th Cir. 2020) ("An applicant for [CAT protection] has the burden of demonstrating 'that it is *more likely than not* that he or she would be tortured if removed to the proposed country of removal.'" (citation omitted)). Thus, we will sustain DHS' appeal and vacate the Immigration Judge's grant of CAT protection. The respondent shall be removed to Russia pursuant to the Immigration Judge's order of removal.

**ORDER:** The respondent's appeal is dismissed.

**FURTHER ORDER:** DHS' appeal is sustained, and the Immigration Judge's October 2, 2024, decision is vacated, in part, to the extent it grants the respondent's application for protection under the CAT.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the

order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).